Good morning, Your Honors. David Bamberger for the Appellant Chemical Producers and Distributors Association. Good morning. With your permission, I'd like to reserve two minutes for rebuttal. Sure. Your Honors, the complaint in this case challenged the California Letter of Authorization requirement in the Pesticide Registration Law. That requirement provided a set of perpetual exclusive use rights for data in direct conflict with FIFRA. Now the California Legislature has passed a new law which eliminates this barrier to generic entry. There are some differences, and I'll address those specifically in response to some of the Court's questions that were sent to Counsel last week. But the particular pernicious feature of the old statute that we challenged, this barrier to entry for generics, has been abolished. And what that means in practical terms is very simple. Of course, for a pesticide producer who already has a registration, there's no barrier. For those who don't have a registration, they now have another means of immediate entry into the market. They don't have this Letter of Authorization requirement as the only way that they can get into the market. And as such... It's moot. Yes, Your Honor. Is that what you're saying? There's no live controversy between these parties anymore. We have no reason to challenge that aspect of the old law because it's not a feature of the new law. What about the pending state litigation? The pending state litigation, first of all, is a case that does not involve our client, chemical producers. It's a case that was brought by Syngenta against a company called Gustafson and the department. That case, and I should say Gustafson is not a generic producer anymore. It was acquired by one of the intervenors in this case, Bayer, and it's now a wholly owned subsidiary. So one has to wonder just exactly what's going on there, why they're challenging that company's registration. But it is litigation that involves the old California... It does, Your Honor, but it does not involve the Letter of Authorization requirement. That's the key point. That other litigation challenged the way that the department required data. That is, it challenged the department requiring less data of generics than basic registrants. And it challenged the way that the department reviewed the data submitted by generics. But the Letter of Authorization requirement, the particular feature of the old law that we challenged, is not at issue in that case. In fact, the scenario there where Gustafson already has a registration, which is being challenged as having been issued unlawfully, means that the Letter of Authorization has nothing to do with that case. In fact, in the 65-page decision that was submitted to the court, I believe it was earlier this week, the only reference to the Letter of Authorization requirement is some historical reference in regard to some defendant that was dismissed three years ago. And there's no mention of preemption whatsoever. I just want to... Is that correct? Preemption was never an issue in that case? The only way it was, Your Honor, and we're not parties in that case, but my understanding from a review of the record is the only way that it was involved in that case is it was listed by the department, not by Gustafson, as its 15th affirmative defense three years ago when the answer was filed. Since that time, there has been no litigation concerning preemption. And importantly, it was just a general blanket statement that the statute was preempted. It had nothing to do with the Letter of Authorization requirement. There's nothing in the Court of Appeals' opinion about preemption. Is that correct? No, Your Honor, not that I'm aware of. It's a long opinion. It took a long time to get through. Right. No, there's nothing about the preemption issue in the Court of Appeals' opinion because it's never been pressed or litigated in any way. It just appears as an affirmative defense by the department. So that case is really a red herring. And we would submit that the question here is whether there's a live controversy in any event between the parties to this case. Doesn't that turn on what you're seeking in your complaint in this case? Yes, Your Honor, it does. What are you seeking? Well, let me back up. Yes. Is there anything in your complaint that seeks to adjudicate anything that would affect existing registrations as opposed to purely prospective relief? Not that we can see, Your Honor. What we challenged in the complaint and one of the Court's questions was whether it was within the scope of the complaint, for example, that there was, well, the question was, does the complaint challenge anything beyond the former failure of California to require mandatory licensing after 10 years of exclusive use? The answer to that question is no. Question number three, whether there was any challenge to the incongruency between the five-year FIFRA term after exclusive licensing expires and the seven-year term under the new statute for data being compensable, if you will, or for cost sharing, I should say. We didn't challenge that. Of course, we didn't have the new law. So to the extent that the laws are different, yes, there are some differences. Well, let me back up to what your complaint says. Is there anything in your complaint that challenges the compelled, arbitrated price usage of data as opposed to the first 10-year period of exclusive use? No, Your Honor. What our complaint asked for was simply declaratory and injunctive relief. And what we wanted was a declaration and an injunction to the effect that if our client's members, generics, wanted to cite data to California's DPR, which had already been cited to EPA and which was outside the exclusive use period, that they would be allowed to do that. We didn't ask for a determination as to what the process would be, what the price would be. We just wanted the court to tell DPR, you may not hold up somebody's registration, unless they're citing data within this exclusive use period, you may not hold up somebody's registration until this cost-sharing arrangement is resolved. We wanted them to follow the FFRA model where you get the right to apply and get a registration, and then all the cost-sharing issues are resolved later. So you had no objection to the letter of authorization requirement after 10 years because it was an alternative to arbitrated prices? Correct. In FFRA and under the new California law, that's right, Your Honor. But under the old California law, there was no arbitrated price model or scenario. If after 10 years, under the old law, if you wanted to use data, the only way you could use it is if the owner of the data gave you permission. You didn't have available to you what is provided under FFRA, which is that you can make what's called an offer to pay. Now under the new California law, you can do that. At the time when you apply for your pesticide registration, you make an offer to pay to the owner, which does not necessarily resolve the cost-sharing issue, but the department and the whole registration process is taken out of the loop. You are entitled to enter the market, and it was the inability to do that that we challenged. Let's assume at the end of the argument, after having brought both sides, we're convinced that it is moot. What's your position on vacatur? Yes, Your Honor. Your Honor, basically the rule, the basic rule, the established rule under the Munsingware case, is that if a lower court decision is on appeal and becomes moot by happenstance or through no fault of the losing party, through no voluntary act of that party, it's not a manipulation of the court system, but something just happens and the case becomes moot, then it is the duty of the appellate court, it is the established rule under the Ringsby case of the Ninth Circuit, that the decision below is vacated. By the Court of Appeals. By the Court of Appeals, Your Honor. I had thought that the rationale for that rule was that mootness deprived the party adversely affected by the lower court judgment of the opportunity to seek review. Am I right about that? Absolutely correct, Your Honor. That's exactly the rationale for it. Is that present here? Yes, Your Honor. How? Our client has had a judgment entered against it on the suit for declaratory injunctive relief, including an award of costs against it of more than $20,000, I believe, and it should not be in a position where going forward that decision which we submit, and I won't get into it here because I understand time is limited, but as we've argued in our briefs, that decision was wrong in a number of respects. And I don't know what litigation may ensue in the future and whether there will be any members of our association who may have quoted back to them provisions or excerpts from that decision. It's in some sense impossible to foresee, but there should be no preclusive effect at all given to that judgment under the established rule in the Munson-Waring-Ringsby case. Well, it's a decision of an individual district court. What binding effect does it have in any event? Well, I mean... It binds, what, litigants in Judge Matz's courtroom? Well, it certainly, in terms of technically, is it binding? I guess the answer is yes, Your Honor. But we all know that if Judge Matz, who's certainly a respected district court judge, has made a decision on an issue, and it's an issue that comes up in another district court in California or another court in the Ninth Circuit or, for that matter, in New York in a district court. It's a little hard to describe what happened here as happenstance, isn't it? No, Your Honor. I would submit it is happenstance, and I would refer the court, in particular, to the National Black Police Association case that we cited in our brief. And that case refers to decisions from a number of circuits, including this circuit, the Bunker Limited Partnership case, the Jones case, and the Tenth Circuit. Every one of those cases viewed mootness caused by legislation as being not attributable to the Voluntary Act, which is the test, not attributable to the Voluntary Act of the appellant. And there are good reasons for that. First of all, in terms of the, just from a practical standpoint, our clients had been trying to get this relief for years, and as is evidenced in the record, they tried to get a legislative fix before they ever filed this lawsuit and lost. So they had no reason to expect that if they didn't succeed in court, they could go to the legislature and get relief. Secondly, the relief that they got is not as if it were drafted by them. There are significant differences between the current California law and FFRA in terms of how much data is compensable, 15 years versus 17 years, whether it's California-only data or just data submitted to EPA. Let me describe an instance in which I thought mootness was clearly, a case I was involved in, clearly happenstance. It was an offshoot of the Ruby Ridge shootout, and it involved the criminal prosecution of an FBI agent named Horiuchi. And state prosecutors in Idaho decided to prosecute him criminally. He removed it to district court. It went all the way up to an in-bank opinion of this court, saying that he was subject to criminal prosecution in state court, notwithstanding the fact he was a federal officer in the exercise of his duties. And within a month or so, there was an election in this little county in Idaho, and there was a new prosecutor appointed, and he said, I don't want to have anything to do with this case, and he dismissed it. And Horiuchi argued it properly. Happenstance has now made this case moot. I had absolutely nothing to do with that, and the fact that it's moot now deprives me of the right to seek Supreme Court review of the erroneous decision of the Ninth Circuit in-bank. Now, are you telling us that if Horiuchi's lawyer had met with the prosecutor during the campaign, contributed to his campaign, and encouraged him to dismiss the case once he got elected, that it would still be happenstance? I think it's a different situation, Your Honor. I don't dispute that the case that you described is certainly a good example of happenstance. What I'm saying is that in this instance, and this case is even more clear than the National Black Police Association case, because there, it was actually the government who was a party. CPDA is just a private association, and if this court were to find that when legislation comes out that fixes the problem, that CPDA is responsible for it as if it's its own voluntary act, not only would it be the first time that, to my knowledge, that any court has said mootness by legislation was attributable to a private party, but as a practical matter, what should CPDA have done when the legislature decided to take this matter up? Were they required, for example, to just remain silent? Were they permitted to advocate or lobby, but only if they did it badly? I don't mean by any stretch of my questions to suggest that. I just, the word happenstance to me has a meaning, which means that somebody had nothing to do with it. But I understand your argument. You're saying the legislature could have said no. And, Your Honor, the other thing is, although it is absolutely true that happenstance appears in the cases, that word, I would submit to you that the cases do not limit the circumstances when the Court of Appeals should vacate to circumstances that are just happenstance in the sense of a bolt of lightning out of the clear blue sky. Before I get you down to your two minutes, what about the alternative of sending it to Judge Matz to decide whether it should be vacated? Well, there are two questions on vacater. The first question is, was it attributable to the voluntary act of the appellant? And if the answer to that question can be answered at the Court of Appeals, and we submit it can be, and in every instance where this has come up, it has been, then the Court of Appeals should vacate. We're notoriously poor fact-finders. That's what district courts are for. And if it's gray about happenstance or non-happenstance, wouldn't the better alternative be to send it back down? I'm not sure how one could find facts in this situation, Your Honor, where the legislature has just enacted something. I don't know how you could find whether CPDA made some or committed some voluntary act. I submit to you the policy reasons given by the National Black Police Association dictate that the courts should not suspect that the legislature is manipulating anything. Is there any reason to think that the California legislature is ever going to turn around and reenact the old statute? No, Your Honor, none whatsoever. Was it supported by the department? Not only was it supported by the department, I believe, that proposed this. I think I see no indication that it might be repeated. If I may answer your question, Judge Hawkins, about if it were to go back to the district court, if this were attributable to the voluntary act of CPDA, which, of course, our position that it can't be, but if it were, hypothetically, then the next question that has to be answered at the district court level is a question of whether this was done with the intent to manipulate the judicial system. What are the equities? Balancing the equities. Weighing, that is, the hardships and consequences to one side or another. And then, finally, weighing the policy considerations on the one hand between respecting the finality of judgments and, on the other hand, the consideration, which Your Honor noted, that judgments that can't be reviewed because the cases become moot should not be final and should be subject to relitigation. You want to save some time for rebuttal, did you? Yes. No. Thank you, Your Honor. Okay. Thank you for your argument. Mr. Lanfair? Thank you, Your Honor. I am Stanley Lanfair, representing the defendants in intervention, the appellees here. I'd like to introduce also my colleague, Robert Schuta, to the counsel's table with me. And I'd like to inquire or confirm that the court did receive our 28-J letter. We did. Thank you, Your Honor. Your Honor, it's obvious that mootness is on the court's mind. We want to thank you for your questions, letting us know that. It's our position that the case is not moot. We believe that the case was correctly decided, although it should be affirmed. However, if the court is inclined to find it moot and inclined to vacate, we think it would be far more proper to refer that decision back to the district court. Your Honor? What's left of this case for which the other side advocated that they did not accomplish the legislation? There's very much left, Your Honor. And I think first in asking that, I'd like to ask the court to look at this from a point of perspective. If one were representing the CPDA in this case, which, after all, sues in a representational capacity on behalf of generic registrants, and looked at the statute as it has been amended, specifically Section 12811.5J, and also the Syngenta opinion, which specifically reads, We have identified no language in the amended statute suggesting that any prior violations of former Section 12811.5 by the Department are excused. Where is there anything in this complaint that seeks to adjudicate prior registration's legality, as opposed to future action? Let me back up before you answer the question. This is declaratory action and an injunction action, and the genius of a declaratory action is you can craft the issues you want to adjudicate. Didn't they do that exactly here? Your Honor, at two points in the complaint, which was brought while the statute was extant, they specifically asked that the statute be declared null and void. That's null and void. There's a context to this suit also that's reflected in the record and in the pleadings, and moreover in our motion to dismiss what we termed a collusive lawsuit at the time the case was brought. And we think the Court needs to look deep into the record. Not too deep to see what's really going on here. The Syngenta case was brought against the Department, which is also the common defendant in this case, alleging that the Department was failing to enforce the law to the benefit of generic registrants. Generic registrants, after all, are the interest that CPDA represents. The record reflects that CPDA brought this suit specifically for the purpose of derailing the suit in the district court. That was reflected in our motion to dismiss. It's also reflected in a footnote to Judge Matz's opinion, and also it was conceded in responses to inquiries brought by Judge Matz to CPDA as to the reasons they brought the suit. They said they brought the suit because there's another suit pending and we believe preemption would end it all. Now, if one were representing CPDA under these circumstances, given the ruling in the Syngenta case and 12811.5J, what they should be saying is please do not dismiss this case's move because the interests of generic registrants remain on the line. It is a contested whether or not Section 12811.5 was properly applied. The court in adjudicating the state case said that the amendments to the statute do not excuse wrongfully issued registration. And moreover, it's manifestly clear from the Syngenta case itself that there remain live controversies as to the proper issuance. But indeed there do, but there are live controversies. Yes. I'm looking for where those controversies are encompassed in this declaratory and injunctive action. And it appears to me that all they're challenging here is the letter of authorization requirement. The letter of authorization requirement is now either eliminated with respect to the first 10 years or it's identical to FFRA or it may run 15-7 instead of 5 years, but that doesn't appear to be within the scope of this complaint either. Where are those controversies about existing registrations within the scope of this complaint? The time the complaint was brought was while the statute remained in effect. And they complained about the operation of the statute at that time, not in the beginning. And specifically? All they're after is the letter of authorization, which is contained in the statute and the regulation. Both cases were about the letter of authorization. That's correct, Your Honor. But they weren't seeking in this case. There's nothing in this case that seeks to invalidate any prior registration. To invalidate a registration. Any prior. This case does not ask the department, does not seek from the court an order directed to the department to invalidate prior registrations. Well, and it logically wouldn't have. The converse would be true. It would seek them to, I guess, validate. If I read this, they were just out to eliminate the letter of authorization. They wanted a process similar to FIFRA. Similar to FIFRA, Your Honor. FIFRA, whatever. It's a smart choice. Important only to those who know and love it well. Your Honor, what they sought to invalidate was the operation of the LOA procedure, which required a letter of authorization and, in turn, which could be obtained only upon payment. Now, that procedure remains in place. It's just now one of three alternatives to obtaining a registration. And what they really complained about is probation. Well, they no longer, in order to get a registration today under the new statute, they don't have to provide a letter of authorization. They can. It's one of three alternatives. Right. It's one of three alternatives, Your Honor. They can, or they have to produce their own data. Right. Or they have to buy from the original registrar. And those are the three things they were always complaining about. But under the new law, they had to produce, they had to have a letter of authorization, correct? Yes, which they could get by purchasing from the basic producer. That's what they were seeking to eliminate in this. As I read their declaratory relief, their prayer and their complaint, that's what they wanted to eliminate, that requirement for the letter of authorization. They were attempting to alleviate or remove that requirement. And that's, as far as I can tell, that's all they were seeking to do here. They were seeking to declare the statute null and void. Well, actually, counsel, their prayer for relief is written in exactly the same words three times in paragraphs 39, 40, and 45 for the declaratory and the injunction. They want the statute, the old California statute declared preempted and thus stricken, quote, to the extent that they purport to grant data submitters in California exclusive use rights to data that were previously submitted to EPA and are subject to FIFRA's mandatory data licensing scheme. I struggle to find anything in that language that would encompass the universe of disputes that you referred to about prior registrations that may or may not have affirmative defenses raised about the preemptive force of FIFRA. Well, Your Honor, it's our position that substantial portions of that remain in effect. And now that the letter of authorization is only one of three. Well, the statute remains in effect with respect to registrations that were granted before January 1, correct? That's what the Court of Appeals just dealt. I'm trying to see how that comes within the scope of this complaint, any such dispute, and I'm struggling still. I guess I have a little more to say about that, Your Honor, except that if the relief they sought had been granted and this court, not that we would want it to do so, but would grant the relief that they asked the district court to grant, then there would be no claims available left in the state court under the Syngenta case, and there would be available no claims against generic registrants and DPR for failure to comport with Section 12811.5 during the period that it would remain in effect. While we're on mootness, if I may, I'd like to shift the direction to cases which have not been addressed. And, in fact, one opinion by Judge Hawkins in the case of Jacob versus Alaska appears to indicate that when an appeal becomes moot by virtue of an amendment to a statute while the case is pending on appeal, the case is not moot. And that is because the statute could be reenacted. It's not really a question of whether. But isn't the standard articulated in our cases, whether there's a, I forget the exact words, a clear probability or something like that that the legislature will reenact the old statute? Isn't that the standard in our cases? There seems to be a divergence in the cases, Your Honor. There are at least three Ninth Circuit cases that address situations where a case was decided in the district court addressing the constitutionality of the statute, and the statute was either amended or repealed while the case was on appeal. And the court clearly said that the amendment or repeal of a statute while the case is pending on appeal does not moot the statute because, among other reasons, the legislature could, if it chose to, reenact the old law or one similar to it. And moreover, specifically in a Jacobus... I'm not aware of any... I'm aware of some cases dealing with local government enactments and whatnot, but I'm not aware of any case dealing with a statute enacted by a state legislature that goes against the standard I've just articulated. Well, Your Honor, I believe Jacobus v. Alaska was such a statute. It's arguably distinguishable in that it imposed criminal sanctions, but I don't think that's material here because what the court said about those sanctions is that sanctions or relief could still be had against persons who violated the statute during the period that the statute was in effect, and for that reason it was not moot. Of course, that was a case that dealt with potential past conduct, and this case may not be. Well, their claim insofar as they were requesting prospective relief did not address past conduct, but at the time they brought it, it addressed present conduct. It's past now, but it was within the scope of the complaint at the time they pled the case. Your Honor, since the court is entertaining the issue of mootments and implicitly... Before you move on, is there any basis upon which the court could think that it's even plausible, much less likely, that the legislature is going to reenact the old statute?  Your Honor, they enacted the statute once. They thought it reflected good purposes at the time. I think there is an ebb and flow and a constant tension between the benefits, between generic production and discovery, research, the introduction of new products, and California has a very unique stake in that issue as the largest consumer of agricultural pesticide products, and at the same time, one of the most... So what you have is the generic possibility that exists that for every law in the book, the legislature might change it. That's true. If we were to remand this to inquire as to whether the judgment should be vacated if we conclude it's moot, what would the district court do? Would they inquire into the advocacy of the other side before the legislature? Would they make findings of fact that too much success dealing with the political process would affect a decision to vacate or not? Well, under Ringsby, Your Honor, I believe what they should inquire into is the equities of the situation, given that vacatur is an extraordinary remedy, and more specifically they should look at the benefits of the possible re-litigation, if any, of this issue, which was already thoroughly decided, with the party at the table as a party to the case, and the inequities to the party in having to re-litigate that issue. In other words, the interest of finality. Now, the reason why we think it would be appropriate for Judge Matz to make this determination, because as you indicated, Your Honor, it's district courts which are really equipped for factual... I mean, what facts, what things beyond the capacity of an appellate court are there that the district court should inquire into that would affect the decision whether to vacate? Yes, Your Honor, I'm getting to that. The court could, if it inquired, if it desired to, inquire in depth into this issue of happenstance, which I think is legitimately an issue under the circumstances as to what was the role of the parties. They lobbied and they were successful. Is that what you're saying? Your Honor, if this court were remanded, I would make an offer of proof that this statute was brokered in the office of lobbyists employed by member companies of CPDA with representatives of the legislature and the department present, and me present. Brokered by them, it was a statute that was motivated very much by the defendant in the case, DPR, and by the interested parties in the case. If those facts are found, what is their legal consequence with respect to vacater? I think that would go to the issue of happenstance as to whether or not it was something that was instigated. You don't think these legislatures are capable of making their own independent judgment about whether to change the law? Every time they get paid a little money, you know, in the lobbying scheme and they meet with the lobbyists and whatnot, they're going to do what the lobbyists say? In the abstract, they can, Your Honor. Well, I mean, that's abstract, but I find that kind of a, you know, I find that kind of, you know, I don't, I like to think the legislatures are, our legislators are honest people, that they'll do what's in the best interest of the people of the State of California. And whether that's suggesting otherwise. Whether you have high-powered lobbyists from this particular industry, I would like to think that our state assemblymen and the legislators, the senators, and our governor are looking out for the best interest of the people of California. And they have their own intelligence, I would think, to make a decision despite whatever lobbying took place, whether both of you were at the table in some backroom office at the legislature, to make a decision that the law ought to be changed. Your Honor, I'm certainly not suggesting that it was unlawful or even improper, but it does go to the issue of the interests of the parties and what they had on the mind in amending the law. Well, in particular, one thing that perhaps we should inquire into is to, or think about, is whether what they had on their mind was getting out of a bad court ruling so they wouldn't have to appeal it, that is, manipulating the litigation process. Now, is it not apparent here that what they had on their mind was getting your data, not at your price, but at a neutrally set price? They didn't get it under laws that stood in Judge Matz's mind or the legislature gave it to him. Isn't that completely clear what was going on here, what the motives were? I can only say that that was one of many motives, Your Honor. Well, what other motive did any of this have but to get your data and not have to pay you your price? To avoid the litigation in the state court where they had pleaded this defense and hoped to avoid the litigation by essentially agreeing to the solution of preemption in the district court. And the record's entirely clear that that's exactly what happened. So they were trying to get the money in order to avoid having to win a lawsuit about whether to get the money. Didn't they hit the home run with the legislature and not have to worry about litigation anymore? I think that would, in part, prove my point, Your Honor. We had a vested, our clients had an interest that was conferred and vested under state law, certain property interests that the legislature had given. DPR, if you look at it from our perspective. That's the state court case. DPR was trying to take that property away and give it to interest represented by the plaintiff, CPDA. CPDA brought this other lawsuit trying to derail that suit in order to gain the benefit of that property interest and take it. And I think under here, that constitutionally protected property interest looms very, very large. Well, it's only protected because the legislature had passed the law. That's right. And it could only be changed prospectively. Well. Under Monsanto. Let me ask you this. When the legislature changed the law, how did that affect prior registrations? What it should do, and as the Syngenta case addresses with remands for findings of fact, is give Syngenta the opportunity to show that some relevant data was submitted during the period the statute was enforced and said that if that's true, then you've got a Fifth Amendment taking claim against the statute. That's being litigated in the state court, correct? That is. That's not a claim. Where CPDA, who was a party to this case, the defendant in this case, and stipulated virtually to preemption in this case is also insisting on preemption as a defense in that suit. And we have no doubt that when this case goes back, the Syngenta case goes back to the state trial court on remand, that the state will be, we move to dismiss on the grounds of preemption, Your Honor. We want summary judgment. An issue which was litigated and rolled upon in our paper. We don't really know from the facts in the state court litigation whether any of them fall into the window of 10 years to 15 years, do we? Or do we? Well, we know, Your Honor. Yes, there were. But it's not decided on the record. And I think what happened was the court made no findings on that. So they want a full evidentiary hearing. Does your case seek adjudication of any, well, it may well be registrations in the zero to 10-year period? Yes, it does. It could well be, because the purely state law claim there would survive no matter what. Well, in all candor, I can't say that. The registrations that were at issue in that case have to do with pesticides that were registered in the 70s and 80s. But nevertheless, they do address data that were statutorily protected under the old law. But I think this only goes to emphasize why if vacater is on the court's mind, and we don't think it should be vacated, but if it is, it's appropriate for the district court to make that decision. And one of the things this court instructed district courts to consider under Rigsby was whether or not parties to the case should be collaterally stopped from asserting those same issues in other litigation. And that's really the essence of the issue here. Okay. We're taking you over your time. Thank you very much for your argument. Thank you for your indulgence, Your Honor. Mr. Butler? Very briefly, let me first of all correct something that Mr. Lanfair said. CPDA is not insisting on anything in a state court case because neither it nor any of its members is a party. I think the point that Your Honors recognized that what facts could be found here? Would we be taking Mr. Lanfair's deposition as to what went on in rooms and that sort of thing? The point of the national black police officer's case and the bunker case from the Ninth Circuit that it relied on, which was 820 F. Second 308, is that the legislature is presumed to act for good lawmaking purposes and not to be manipulating judicial processes. In this instance, the legislature, we suspect, recognized that there was a problem with the law. We happen to agree with that. That doesn't mean that we caused the legislature to do anything. All we did was assert our First Amendment right to express our view that we thought the law ought to be changed. What the legislature did about it was up to them. I take it, Your Client, for the other side to persuade us this case is not moved, we have to think there's some kind of possibility that you will turn around and persuade the legislature to give the money back to them that they say you just persuaded the legislature to give from them to you. Do you have any plan to do that? No, Your Honor. Thanks for your argument. Thank both sides for their argument. Very interesting case. The case just argued will be submitted for decision, and the Court will stand in recess for the morning.
judges: Hawkins, Paez, Wake